```
               IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF KANSAS
```

LENA SPENCER,

                Plaintiff,

vs.                                    Case No. 13-1380-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

                Defendant.


MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits. The matter has been fully briefed by the parties.

**I.  General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by

1

such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

     The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that

they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step

requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On September 23, 2011, administrative law judge (ALJ) James Harty issued his decision (R. at 13-26). Plaintiff alleges that she had been disabled since May 7, 2006 (R. at 13). Plaintiff meets the insured status requirements for social security disability benefits through December 31, 2008 (R. at 15). At

step one, the ALJ found that plaintiff did not engage in substantial gainful activity from May 7, 2006 through December 31, 2008 (R. at 15).  At step two, the ALJ found that plaintiff had numerous severe impairments (R. at 15).  At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 16-19).  After determining plaintiff's RFC (R. at 19), the ALJ determined at step four that plaintiff is unable to perform past relevant work (R. at 24).  At step five, the ALJ found that plaintiff could perform jobs that exist in significant numbers in the national economy (R. at 24-25).  Therefore, the ALJ concluded that plaintiff was not disabled (R. at 25-26).

**III.  Did the ALJ err in finding that plaintiff's impairments do not meet or equal listed impairment 12.05C?**

The ALJ found that plaintiff's impairments do not meet or equal listed impairment 12.05C (R. at 19).  Listed impairment 12.05C is as follows:

> 12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied....
>
> ********************

5

> C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R., Pt. 404, Subpt. P., App. 1 at 479 (2013 at 512).  In order to satisfy listed impairment 12.05C, plaintiff must show: (1) significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence must demonstrate or support onset of the impairment before age 22 (a.k.a. the "capsule" definition), (2) a valid verbal, performance or full scale IQ of 60-70, and (3) a physical or other mental impairment imposing an additional and significant work-related limitation of function.  <u>Wall v. Astrue</u>, 561 F.3d 1048, 1062 (10th Cir. 2009).

Plaintiff has the burden to present evidence establishing that his impairments meet or equal a listed impairment.  <u>Fischer-Ross v. Barnhart</u>, 431 F.3d 729, 733 (10th Cir. 2005).  In order for the plaintiff to show that his impairments match a listing, plaintiff must meet "all" of the criteria of the listed impairment.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify.  <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530, 110 S. Ct. 885, 891 (1990)(emphasis in original).

On March 23, 2010, Dr. Hackney performed an IQ test on plaintiff, and found that she had a full scale IQ of 67, a performance IQ of 76, and a verbal IQ of 65 (R. at 678). Dr. Hackney concluded his report by stating that his findings and diagnosis are a valid and reliable measure of her current memory and intellectual functioning (R. at 680). Dr. Hackney had previously indicated in his report of February 8, 2010, under "History and Behavioral Observations" that the behavior and history reported on that date were a "tremendous change from what was reported in a Mental Status Exam of last year" (R. at 596).[1]

The ALJ found that plaintiff did not meet the requirements of 12.05C. He noted IQ scores of 67 and 65, but found that they were at odds with plaintiff's previous intelligence testing performed when she was in school. He stated that the recent IQ tests were not consistent with her level of adaptive functioning during the period of adjudication. He further noted that the recent IQ tests were not consistent with the diagnostic impressions of other providers who evaluated plaintiff prior to the date last insured, and diagnosed her with borderline intellectual functioning. He noted that the IQ tests were performed after the date last insured, and at a time when plaintiff's mental health had clearly deteriorated substantially

---

[1] Plaintiff's last mental status exam was on June 29, 2009 (R. at 574-576).

7

from what it had been during the period of adjudication.  He found no evidence that plaintiff has mild mental retardation, initially manifested prior to the age of 22, and therefore did not meet the criteria of 12.05C (R. at 19).

As the ALJ noted, school records show a verbal IQ of 74, a performance IQ of 88, and a full scale IQ of 80 when plaintiff was in the 2nd grade (R. at 321).  School records also show a language IQ of 78, a non-language IQ of 92, and a total IQ of 84 in March 1979.[2]  On the same test in January 1983, plaintiff had a language IQ of 79, a non-language IQ of 85, and a total IQ of 81 (R. at 318).  Plaintiff cites to 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 112.00(D)(10), regarding IQ scores for children, which states that the results of IQ test scores tend to stabilize by the age of 16, and that, when a child is between the ages of 7-16, IQ test results with an IQ above 40 tend to be an indication of the child's current status for 2 years.  This regulation goes to the weight, but not the admissibility, to be accorded to the IQ tests performed when plaintiff was a minor.

The ALJ found that plaintiff's recent IQ scores are not consistent with the plaintiff's level of adaptive functioning during the period of adjudication (R. at 19).  The ALJ also found that the recent IQ scores were not consistent with the diagnostic impressions of other providers who evaluated

---

[2] Plaintiff was born on August 6, 1970 (R. at 574).

plaintiff prior to the date last insured (December 31, 2008). On July 20, 2010, Dr. Stern opined that plaintiff's recent IQ scores were not consistent with the self-reported activities of daily living or with prior evaluations (R. at 730). Although acknowledging lower functioning, Dr. Stern stated that her adaptive functioning did not reflect this level of impairment, noting that plaintiff's last employer noted no work performance difficulty, the ability to drive, use a computer and handle her own funds (R. at 730).[3] Dr. Cohen made similar findings on April 2, 2010 (R. at 700).

    Dr. Allen performed a mental status exam on April 25, 2007. She noted that plaintiff was in special education, but graduated on time. Dr. Allen diagnosed "rule out borderline intellectual functioning." She opined that plaintiff, while slow, is able to understand and carry out simple instructions, and that physical problems are the most prominent issue that gets in her way in terms of employment. Dr. Allen found that plaintiff can sustain attention and concentration adequate enough for most basic sorts of tasks. She can work around people and tends to be fairly pleasant. She can adapt to a variety of work environments. Dr. Allen noted that she has difficulty keeping jobs, and wondered how hard plaintiff had worked at obtaining and maintaining employment (R. at 562-564).

---

[3] Plaintiff's prior employer, from 2001-2003, stated that plaintiff had no problems performing her job, that she was laid off due to slow business conditions, and that they would rehire her if an opening existed (R. at 251-253).

The ALJ also noted that Dr. Porter performed a mini mental State exam on January 5, 2007 (R. at 21). Plaintiff scored 30 out of 30 on that exam (R. at 843-844).

Dr. Stern also indicated on July 20, 2010 that the severity of plaintiff's depression and post-traumatic stress disorder (PTSD) symptoms were not clearly established until a mental status examination conducted by Dr. Smith in July 2009. Dr. Stern noted that her cognitive limitations have not precluded substantial gainful earnings by the plaintiff in 2001 and 2002.[4] He opined that the severity of plaintiff's social interaction problems and work persistence problems cannot be determined prior to the date last insured (R. at 716).

The ALJ correctly noted that the 2010 IQ testing showing IQ scores of 70 or less were performed after the date last insured, and at a time when plaintiff's mental health had clearly deteriorated substantially from what it had been during the period of adjudication. Dr. Hackney, who performed the IQ testing (R. at 678-680), had previously stated that plaintiff's behavior and daily activities reported in February 2010 demonstrated "a tremendous change from what was reported in a Mental Status Exam of last year" (R. at 596). She is no longer doing a number of activities, but is basically staying at home and being very depressed (R. at 596).

---

[4] In fact, plaintiff earnings constituted substantial gainful activity for five years, from 1998-2002 (R. at 198; see http://www.socialsecurity.gov/oact/cola/sga.html).

10

Finally, the ALJ found that there is no evidence that plaintiff had mild mental retardation, initially manifested prior to the age of 22 (R. at 19). Dr. Stern stated that it is clear that her borderline intellectual functioning was present prior to the date last insured (R. at 716). Dr. Cohen stated that he could not document scores in the mental retarded range prior to age 22, and her adaptive functioning did not reflect this level of impairment (R. at 700); similar findings were made by Dr. Stern (R. at 730).

As noted above, plaintiff has the burden of demonstrating that her impairments meet all of the criteria of a listed impairment. The court will not reweigh the evidence or substitute its judgment for that of the Commissioner. Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002). Although the court will not reweigh the evidence, the conclusions reached by the ALJ must be reasonable and consistent with the evidence. See Glenn v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(the court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion). The court can only review the sufficiency of the evidence. Although the evidence may support a contrary finding, the court cannot displace the agency's choice between two fairly conflicting

views, even though the court may have justifiably made a different choice had the matter been before it de novo. Oldham v. Astrue, 509 F.3d 1254, 1257-1258 (10th Cir. 2007).

Plaintiff has failed to present any evidence, either opinion evidence or otherwise, that clearly establishes that plaintiff's impairment meets the capsule definition. The ALJ relied on IQ testing while plaintiff was a minor which showed IQ scores consistently above 70, the severity of plaintiff's mental impairments was not clearly established until July 2009 (R. at 716), and the February 2010 evaluation showed a tremendous change in plaintiff's activities and level of depression compared to her exam in 2009 (R. at 596). The reports of Dr. Stern and Dr. Cohen provide clear support for finding that plaintiff does not meet the capsule definition (R. at 700, 730). Both Dr. Stern and Dr. Cohen also question the determination of Dr. Hackney that plaintiff suffers from mild mental retardation, noting that this finding is not consistent with plaintiff's prior level of functioning and with prior evaluations (R. at 700, 730). The court will not reweigh the evidence. Sufficient evidence exists in the record to support the ALJ's determination that plaintiff's impairments, on or before December 31, 2008, do not meet or equal listed impairment 12.05C.

**IV. Did the ALJ err by failing to properly determine the onset of plaintiff's disability in accordance with Social Security Ruling 83-20?**

Social Security Ruling (SSR) 83-20 sets forth the policy and describes the relevant evidence to be considered when establishing the onset date of disability. 1983 WL 31249 at *1. Once published, Social Security Rulings are binding on all components of the Social Security Administration. 20 C.F.R. § 402.35(b)(1). Factors relevant to the determination of disability onset include the individual's allegations as to when the disability began, the work history, and the medical evidence. SSR 83-20, 1983 WL 31249 at *1; Reid v. Chater, 71 F.3d 372, 373-374 (10th Cir. 1995). These factors are often evaluated together to arrive at the onset date. However, the individual's allegation or the date of work stoppage is significant in determining onset only if it is consistent with the severity of the condition(s) shown by the medical evidence. SSR 83-20, 1983 WL 31249 at *1. In determining the date of onset of disability, the date alleged by the individual should be used if it is consistent with all the evidence available. 1983 WL 31249 at *3.

With slowly progressing impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling. Determining the proper

onset date can be particularly difficult when adequate medical records are not available.  In such cases, it will be necessary to infer the onset date.  1983 WL 31249 at *2.  In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment occurred some time prior to the date of the first recorded medical examination.  1983 WL 31249 at *3.  Ruling 83-20 thus recognizes that it sometimes may be necessary to infer the onset date.  The ALJ then should call on the services of a medical advisor at the hearing.  A medical advisor need be called only if the medical evidence of onset is ambiguous.  Reid, 71 F.3d at 374.  If the medical evidence is ambiguous and a retroactive inference is necessary, SSR 83-20 requires the ALJ to call upon the services of a medical advisor to insure that the determination of onset is based upon a legitimate medical basis.  Blea v. Barnhart, 466 F.3d 903, 911 (10th Cir. 2006); Grebenick v. Chater, 121 F.3d 1193, 1200-1201 (8th Cir. 1997).

    The onset date should be set on the date when it is most reasonable to conclude from the evidence that the impairment was sufficiently severe to prevent the individual from engaging in substantial gainful activity for a continuous period of at least 12 months or result in death.  Convincing rationale must be given for the date selected.  SSR 83-20, 1983 WL 31249 at *3.

Where medical evidence of onset is ambiguous, an ALJ is obligated to call upon the services of a medical advisor. In the absence of clear evidence documenting the progression of the claimant's condition, the ALJ does not have the discretion to forgo consultation with a medical advisor. Blea, 466 F.3d at 911-912.

On October 15, 2010, on plaintiff's supplemental security income (SSI) claim, defendant had found that plaintiff was disabled beginning March 26, 2009, the date of her application for SSI income (R. at 124-125). Plaintiff argues that the ALJ failed to provide a rationale to support a finding that plaintiff's onset date was not on or before December 31, 2008. Dr. Stern opined that the severity of plaintiff's mental impairments cannot be determined prior to the date last insured (R. at 716). Dr. Golon was asked about plaintiff's mental impairments from May 7, 2006 through December 31, 2008. Although Dr. Golon found that plaintiff's impairments met or equaled listed impairment 12.04A&B, he states that his opinion was based on limited treatment sources and overall with the consultative examination in June 2009 (R. at 1084-1085). Dr. Golon did not address listed impairment 12.05C. The ALJ noted that the earliest date cited by Dr. Golon was June 2009, six months after the expiration of plaintiff's insured status, and stated that Dr. Golon did not indicate that there is any basis

15

to relate his opinion back to the period on or before December 31, 2008. Thus, the ALJ gave no weight to Dr. Golon's opinion regarding plaintiff's status on or before December 31, 2008 (R. at 23). Furthermore, Dr. Stern opined that the severity of plaintiff's mental impairments could not be determined prior to the date last insured, and that the severity of plaintiff's impairments were not clearly established until July 2009 (R. at 716).

It is important to understand that the issue of whether a medical advisor is required under SSR 83-20 does not turn on whether the ALJ could reasonably have determined that the claimant was not disabled before her last insured date. Rather, when there is no contemporaneous medical documentation, the court asks whether the evidence is ambiguous regarding the possibility that the onset of her disability occurred before the expiration of her insured status. Blea, 466 F.3d at 911.

The court will not reweigh the evidence. The ALJ utilized a medical expert to determine the extent of plaintiff's mental impairments on or before December 31, 2008 (Dr. Golon, 2011 interrogatory). The court had before it mental status exams in 2007 (Dr. Allen), 2009 (Dr. Smith), and 2010 (Dr. Hackney). The court also had before it a mini mental status exam in 2007 (Dr. Porter). State agency assessment were performed in 2010 by Dr. Cohen and Dr. Stern which reviewed the evidence regarding

plaintiff's mental impairment. Given the abundance of both contemporaneous medical evidence and medical opinion evidence, the court finds that there was no need to obtain an additional medical advisor. The court finds that all the medical evidence, and the ALJ's discussion and weighing of that evidence provides substantial evidence to support the ALJ's finding that plaintiff did not meet or equal listed impairment 12.05C, and was not disabled prior to December 31, 2008.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

Dated this 25th day of February, Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge